UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ANGELA BOWERS GRIMES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:17-CV-365-TWP-HBG |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Deputy Commissioner for Operations, | ) |
| performing the duties and functions not | ) |
| reserved to the Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 20 & 21] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 24 & 25]. Angela Bowers Grimes ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Nancy A. Berryhill ("the Commissioner"). For the reasons that follow, the Court will **RECOMMEND** that Plaintiff's motion be **DENIED** and the Commissioner's motion be **GRANTED**.

**I. PROCEDURAL HISTORY**

On April 8, 2014, Plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, claiming a period of disability that began on October 25, 2013. [Tr. 178-81]. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 126-27]. A hearing was held on

April 14, 2016. [Tr. 56-84]. On May 23, 2016, the ALJ found that Plaintiff was not disabled. [Tr. 41-51]. The Appeals Council denied Plaintiff's request for review [Tr. 1-4], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on August 18, 2018, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.   ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.
>
> 2. The claimant has not engaged in substantial gainful activity since October 25, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: degenerative disc disease of the spine; a bereavement disorder with grief issues; and depression and anxiety (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b): except the claimant must avoid moderate exposure to hazards, such as working at unprotected heights or around dangerous machinery; she can perform simple and multi-step detailed work, but not executive level work; she can occasionally interact with the public, coworkers and supervisors; and she can adapt to infrequent (amounting to 50%) changes in the work process.
>
> 6. The claimant is unable to perform any past relevant work. (20 CFR 404.1565).

> 7. The claimant was born on June 6, 1972 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).
>
> 8. The claimant has a high school education and is able to communicate in English (20 CFR 404.1564).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from October 25, 2013, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 43-51].

### III.  STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

3

*Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV.   DISABILITY ELIGIBILITY

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant will only be considered disabled

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§ 423(d)(2)(A).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

4

> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. § 404.1520(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. § 404.1545(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.    ANALYSIS

On appeal, Plaintiff submits that substantial evidence does not support the ALJ's RFC determination. Plaintiff argues that the ALJ erred in concluding a cane was not medically

5

necessary and in assigning "some weight" to the opinion of treating physician, Darel A. Butler, M.D. [Doc. 21 at 16-25]. The Court will address Plaintiff's contentions in turn.

### A.     Medical Necessity of a Cane

Plaintiff maintains that the medical evidence of record establishes the need for a cane, and the ALJ's finding to the contrary is not supported by substantial evidence. [*Id.* at 16-20].

Unless a cane, or other hand-held assistive device, is necessary, it will not be considered an exertional limitation that reduces a claimant's ability to work. *Carreon v. Massanari*, 51 F. App'x 571, No. 01–3552, 575, 2002 WL 31654581, at *3 (6th Cir. 2002). A cane is medically necessary when medical documentation establishes the need for such a device to walk or stand and describes "the circumstance for which it is needed." Soc. Sec. Rul. 1996 WL 374185, at *7 (July 2, 1996). Therefore, medical documentation must do more than reflect a subjective desire to use a cane. *Murphy v. Astrue*, No. 2:11-CV-00114, 2013 WL 829316, at *10 (M.D. Tenn. Mar. 6, 2013), *adopted sub nom.*, *Murphy v. Colvin*, No. 2:11-CV-00114, 2013 WL 4501416 (M.D. Tenn. Aug. 22, 2013) (citing *Penn v. Astrue*, 2010 WL 547491, at *6 (S.D. Ohio Feb.12, 2010)).

In the instant case, the ALJ observed that Plaintiff appeared with a cane on December 4, 2014, when she presented to her rheumatologist, Jeffrey Scheib, M.D. [Tr. 47, 483-85]. Prior to this time, treatment records from Dr. Scheib and Plaintiff's treating neurologist, Dr. Butler, documented normal gait and station, full range of motion, no tenderness in the lower extremities, and no mention of a cane. [Tr. 46, 334, 338, 343, 397, 465, 481]. Plaintiff also reported on two occasions to her primary care provider, Beverley Tracey, M.D., that she occasionally used a cane for distance walking [Tr. 500, 502]. When Plaintiff was treated by Dr. Scheib on December 4, 2014, she reported she used a cane for balance because her hips and knees would "give out." [Tr. 47, 483]. Dr. Scheib noted Plaintiff ambulated somewhat cautiously but that her cane was about

6

two inches too short. [Tr. 484]. Examination findings were normal with the exception of slight decrease in internal rotation in the left iliofemoral joint compared to the right joint. [*Id.*].

Two months later, on February 2, 2015, Dr. Butler opined that Plaintiff must use a cane or other assistive device when engaging in occasional standing or walking. [Tr. 479]. Examination findings by Dr. Butler on that same day included normal station and gait, normal muscle strength and tone, and no adventitious movements. [Tr. 47, 487]. Plaintiff was subsequently prescribed a cane on March 8, 2016, by neurologist Elizabeth Ferluga, M.D. [Tr. 48, 626]. Between Dr. Butler's February 2, 2015 opinion that Plaintiff required a cane and Dr. Ferluga's March 8, 2016 prescription for one, the record documents at least one occasion in which Plaintiff presented with a cane. [Tr. 562].

In the disability decision, the ALJ concluded that Plaintiff did not require a cane. [Tr. 48]. While Dr. Ferluga wrote a prescription for a cane, the ALJ observed that Dr. Ferluga's treatment notes, as well as those from other examining physicians, demonstrated that Plaintiff's use of a cane predated the prescription by at least a year. [*Id.*]. The ALJ also found that the evidence established "no medical necessity for using a cane." [*Id.*]. Specifically, the ALJ noted that physical examinations were essentially unremarkable as Plaintiff presented with normal muscle tone, little if any atrophy in the lower extremities, and no neurological deficits were noted. [Tr. 49].

Plaintiff argues that the ALJ's finding that a cane was not required "flies in the face of two treating physicians who opined a cane was medically necessary." [Doc. 21 at 18]. The Court finds that neither physicians' opinion is dispositive to the issue. *See Sims v. Comm'r of Soc. Sec.*, No. 2:16-CV-342, 2017 WL 4236578, at *12 (S.D. Ohio Sept. 25, 2017) (observing that "[w]hile Plaintiff relies on Dr. Chang's prescription and his opinion that she sometimes needs a cane, this evidence is not dispositive" where the plaintiff only needed a cane at "times" and medical records

7

documented that plaintiff was not completely prohibited from functioning without it).

Here, although Dr. Butler opined a cane was necessary for occasional walking and standing, his own examination findings prior to his opinion demonstrate Plaintiff had a normal stance and gait. Thereafter, while Plaintiff presented with abnormal gait, Plaintiff reported to Dr. Beverley in July 2015 that she walked a mile every other day and the medical records overall provide no substantive comment on the use of a cane. [Tr. 487, 512, 514, 581, 622]. Moreover, Dr. Ferluga's prescription for a cane simply reads, "Cane ICD-10: R26.9." [Tr. 626]. "[T]he mere notation by a physician that a claimant should use a cane is not evidence of medical necessity. Indeed, the key finding in such cases is medical documentation establishing the need for a hand-held assistive device to aid in walking and standing and describing the circumstances for which it is needed." *Halama v. Comm'r of Soc. Sec.*, No. 1:12 CV 1859, 2013 WL 4784966, at *8 (N.D. Ohio Sept. 5, 2013) (citations, quotations, and internal quotation marks omitted). Dr. Ferluga's prescription does not provide any insight as to why a cane was needed or the circumstances for which it is needed. *See Hale v. Berryhill*, No. 3:15-0443, 2017 WL 3130578, at *6 (M.D. Tenn. July 24, 2017) (where a prescription simply read, "Order: Cane—Single point," the court concluded that such evidence was not "an indication from a provider that the use of a cane is medically necessary" and further observed "the order form contains no explanation as to why the cane was required; an omission that precluded the ALJ from finding that such a device was a medical necessity"), *adopted by*, No. 3:15-CV-00443, 2017 WL 4176276, at *1 (M.D. Tenn. Sept. 20, 2017)

Plaintiff cites to various medical records that document complaints of dissociated spells, blackouts, sleep walking, leg pain, and not being able to walk as evidence necessitating a cane. [Doc. 21 at 19] (citing Tr. 296, 340, 360). But subjective complaints do not amount to medical

8

documentation. *See Mitchell v. Comm'r of Soc. Sec.*, No. 13CV01969, 2014 WL 3738270, at *12 (N.D. Ohio July 29, 2014) ("However, Mitchell's testimony does not qualify as 'medical documentation establishing the need' for the cane under SSR 96–9p."). Furthermore, no physician suggested a cane was medically necessary in light of Plaintiff's foregoing complaints.

Plaintiff also points to Dr. Butler's assessment of muscle cramping in Plaintiff's limbs, abnormal involuntary movements, seizures, appearance of severe pain, rubbing her legs, and "apparent fibromyalgia." [Doc. 21 at 19] (citing Tr. 338, 343, 362). The existence of a diagnosis, however, says nothing about its severity. *Higgs v. Brown*, 880 F.2d 860, 863 (6th Cir. 1988). To be sure, contemporaneous physical findings on examination demonstrated no evidence of clubbing, cyanosis, edema, or muscle tenderness, normal bulk, tone, strength, and gait (including heel and toe gaits), normal deep knee bending, and normal deep tendon reflexes [Tr. 338]; full range of motion of all joints without effusion, synovitis, increased warmth, or erythema [Tr. 343]; and, again, no cyanosis, clubbing, or edema although Plaintiff was observed rubbing her legs [Tr. 362]. The ALJ further noted that not only were examination findings largely normal, but extensive testing in the form of MRIs, EEGs, ENT/nerve conduction studies, and a sural nerve biopsy all produced normal to mild findings. [Tr.46-48, 621]. Accordingly, physical examinations and objective testing that might explain Plaintiff's need for a cane fail to substantiate the medical necessity for one.

Remaining treatment records cited by Plaintiff of purported examination findings that support the need for a cane are no more persuasive as they likewise fail to demonstrate necessity or the circumstances for which a cane is needed. [*See* Doc. 21 at 19] (citing 354, 487, 494, 504). Moreover, even when Plaintiff did appear with an abnormal gait, she was not using a cane. [Tr. 512, 581, 623]. Rather, treatment records suggest that Plaintiff infrequently used a cane and such

9

use was discretionary. [Tr. 500, 502, 506, 514]. "Simply because Plaintiff may have been 'using a cane at various times,' does not mean the ALJ was required to include it in Plaintiff's RFC." *Forester v. Comm'r of Soc. Sec.*, No. 2:16-CV-1156, 2017 WL 4769006, at *4 (S.D. Ohio Oct. 23, 2017).

Accordingly, in the absence of medical documentation explaining the necessity of a cane to support Dr. Butler's opinion and Dr. Ferluga's prescription, in conjunction with Plaintiff's largely normal examination findings and normal to mild test results, the Court concludes that substantial evidence supports the ALJ's finding that "there is no reasonable medical necessity for using a cane."

### B.     Opinion of Darel A. Butler, M.D.

Plaintiff maintains that her treating relationship with Dr. Butler entitled his opinion to greater weight than that which was accorded by the ALJ. [Doc. 21 at 20-25].

Plaintiff first presented to Dr. Butler on April 7, 2014, for muscle pain, leg tremors, and fainting/black-out spells. [Tr. 46, 458-61]. Over the course of treatment between April and June 2014, Dr. Butler performed a series of tests, including an EEG, MRIs of the brain and cervical and thoracic spine, and an EMG/NCS. The EEG and MRI of Plaintiff's brain were normal, while the EMG/NCV revealed mild right sural neuropathy. [Tr. 46, 452, 455]. Although Plaintiff had some flexor spasms that were intermittent and occasional fasciculations during the EMG, Dr. Butler noted that the EMG was completely normal even during these episodes which only produced mild pain. [Tr. 46, 455]. The MRIs of Plaintiff's spine were unremarkable other than minimal central bulging of C5-C6, mild spondylosis, and tiny thoracic disc herniations at T4-T5 and T7-T8. [Tr. 46, 446]. A subsequent muscle nerve biopsy in August 2014 showed nonspecific changes, which were both neuropathic and myopathic in nature. [Tr. 449]. Dr. Butler described "a huge panel of

10

muscle tests" as producing normal results. [Tr. 480]. Additionally, Plaintiff reported that taking the medication Tegretol provided some improvement for her tremors and movement disorder. [Tr. 449, 480, 486]. Examination findings through February 2015, were generally normal. [Tr. 46-47, 334, 338, 343, 397, 465, 481, 484].

On February 2, 2015, Dr. Butler noted that Plaintiff had undergone a muscle nerve biopsy and muscle biopsy with Kathryn Bradley, M.D., a neurologist at Vanderbilt University Medical Center. [Tr. 47, 486]. Dr. Bradley noted physical examination findings were largely normal other than a limping gait and an inability to tandem walk. [Tr. 47, 493]. She also noted that Plaintiff demonstrated significant discomfort that was out of proportion to examination on strength testing. [*Id.*]. Dr. Bradley suspected a functional movement disorder possibly related to an underlying pain syndrome, such as fibromyalgia, and recommended a MRI of the lumbar spine, tilt table test, and an autonomic function test. [Tr. 47, 494]. The tilt table test was positive for hemodynamic pattern consistent with neutrally medicated syncope while the autonomic function test showed a robust Valsalva maneuver with a reduced orthostatic tolerance that may be reflective of Plaintiff's medications. [Tr. 47, 546, 548]. An MRI of the lumbar spine revealed grade 1 subluxation of L-5 to S-1 with degenerative disc disease [Tr. 47, 564], which Dr. Bradley characterized as "a very mild displacement" [Tr. 570].

Plaintiff was also seen by a second neurologist at Vanderbilt, Amar Bhatt, M.D., on February 24, 2015. [Tr. 47, 555-62]. Dr. Bhatt opined that Plaintiff's altered awareness and shaking episodes were likely nonepileptic and recommended further testing for a definitive diagnosis. [Tr. 47, 562]. Plaintiff returned to Vanderbilt on April 9, 2015, and November 10, 2015, for further neurologic treatment with Dr. Ferluga. [Tr. 47-48, 578-82, 621-23]. Physical examination findings were normal except a slow antalgic gait. [Tr. 47-48, 581, 622]. Dr. Ferluga

11

opined that Plaintiff likely suffered from central pain syndrome and further concluded that her "spells" were nonepileptic in nature. [Tr. 48, 623]. Since Plaintiff's spells were not occurring frequently enough to capture on a routine or ambulatory EEG, Dr. Fergula recommend an epilepsy monitoring unit stay. [Tr. 49, 623].

The record includes a "Seizure Impairment Questionnaire" by Dr. Butler, completed on February 2, 2015. [Tr. 48, 476-79]. Dr. Butler opined that Plaintiff suffered from non-convulsive seizures, characterized by loss of consciousness, occurring three times a week for four minutes, and requiring 30 minutes of rest afterwards. [Tr. 48, 476]. Dr. Butler explained that stress and emotional factors precipitated the seizures and contributed to Plaintiff's functional limitations which prevented her from performing even sedentary work. [Tr. 48, 476-77]. The following functional limitations were then assessed: Plaintiff would need to change positions between sitting, standing, and walking at least every five minutes; she could only sit, stand, or walk for less than an hour total in an eight-hour work day; she would need to lie down "all the time;" she would need a cane to stand and walk; she would have significant limitations in doing repetitive reaching, handling, or fingering; she could occasionally lift up to ten pounds; and she would need to avoid humidity, heights, and temperature extremes. [Tr. 48, 477-79].

The ALJ concluded that Dr. Butler's opinion was entitled to "some weight," as it was mostly consistent with Plaintiff's subjective allegations. [Tr. 48]. The ALJ observed that the opinion was inconsistent with clinical and objective medical evidence, including the multiple physical examinations that were unremarkable except subjective loss of strength in the lower extremities and an antalgic gait, and objective testing, including radiographic studies, an EEG, a tilt table and autonomic function test, EMG/NCS studies, and a sural nerve biopsy, all showed mild findings at worse. [*Id.*]. Furthermore, the ALJ noted that the medical consensus was that

12

Plaintiff did not have an epileptic seizure disorder. [*Id.*]. "Great weight" was, instead, given to the opinion of non-examining state agency physician Deborah Webster-Clair, M.D., who opined on October 30, 2014, that Plaintiff had an RFC consistent with light work. [Tr. 49, 107-09]. The ALJ found Dr. Webster-Clair's opinion more consistent with Plaintiff's unremarkable examination findings, except an abnormal gait, and objective testing that demonstrated mild abnormalities at most. [*Id.*].

Plaintiff submits that "Dr. Butler rendered a highly informed opinion" that was supported by objective testing and findings made by other examining physicians. [Doc. 21 at 23-24]. In support of her argument, Plaintiff cites to many of the treatment notes discussed above as well as the results of objective testing performed by Dr. Butler, Dr. Bradley, Dr. Bhatt, and Dr. Ferluga. [*Id.*]. Despite Plaintiff's contentions, the Court finds substantial evidence supports the ALJ's assignment of some weight to Dr. Butler's opinion.

Plaintiff's mere citation to the foregoing evidence without any explanation as to how the examination findings or objective tests support Dr. Butler's opinion that Plaintiff's "seizures" rendered her completely disabled is insufficient to show error on the ALJ's part. While Plaintiff recites medical findings, she fails to appreciate that the disabling limitations opined by Dr. Butler are not consistent with or supported by those findings. Specifically, as noted herein and discussed by the ALJ, physical examination findings by each examining physician were almost entirely normal other than an abnormal gait and some weakness in Plaintiff's lower extremities. Moreover, despite the extensive testing and workups that were conducted, test results produced normal to mild findings. "Objective findings of mild severity are not typically indicative of disabling symptoms." *Wagner v. Comm'r of Soc. Sec.*, No. 4:11 CV 1891, 2012 WL 3961225, at *13 (N.D. Ohio Sept. 10, 2012).

13

Significantly, prior to issuing his opinion, Dr. Butler's own treatment notes documented normal gait and stance, muscle tone and strength, deep-knee bends, reflexes, sensation, and no muscle tenderness, spasms, or other uncontrolled movement. "ALJs may discount treating-physician opinions that are inconsistent with substantial evidence in the record, like the physician's own treatment notes." *Leeman v. Comm'r of Soc. Sec.*, 449 F. App'x 496, 497 (6th Cir. 2011). Here, Dr. Butler's benign findings fail to substantiate that Plaintiff must change position every five minutes, can only sit, stand, or walk less than one hour a day, and can only carry and lift up to 10 pounds occasionally.

The Court further notes that none of Plaintiff's spells were recorded or observed by a medical source[1] despite Dr. Butler opining that Plaintiff's seizures occurred at least three times per week, and Plaintiff testified they occurred every one to two days [Tr. 64]. Indeed, Dr. Ferluga noted that Plaintiff's spells were not occurring frequently enough to capture on a routine EEG or ambulatory EEG. Accordingly, the Court finds that the lack of clinical and objective medical evidence supporting Dr. Butler's opinion, including his own treatment notes, provides substantial evidence and constitutes good reason for the assignment of some weight. *See Holland v. Colvin*, No. 5:13-CV-393-JMH, 2014 WL 3439671, at *5 (E.D. Ky. July 11, 2014) ("Thus, by pointing out the lack of objective medical evidence to support [] Dr. Dunaway's disabling opinion, the ALJ gave good reasons for rejecting his opinion and substantial evidence supports this decision.");

---

[1] Plaintiff improperly cites to a June 2016 treatment note submitted to the Appeals Council in which two psychogenic non-epileptic spells were recorded by EEG. [Doc. 21 at 24] (citing 27-28). The Sixth Circuit Court of Appeals has made clear "that where the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits," as is the case here, a court "cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).

14

Case 3:17-cv-00365-TWP-HBG   Document 26   Filed 04/19/18   Page 14 of 16
PageID #: 768

*Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 917, 927 (E.D. Tenn. 2013) (recognizing the lack of objective medical evidence constituted "good reason")

Plaintiff also takes issue with the ALJ's additional finding that Dr. Butler's opinion was undermined by the consensus diagnosis that Plaintiff did not have an epileptic seizure disorder. Plaintiff counters that "Dr. Butler did not cite an epileptic seizure disorder." [Doc. 21 at 24]. To the contrary, Dr. Butler assessed nonconvulsive seizures [Tr. 476] and subsequent testing performed by Dr. Bhatt and Dr. Ferluga concluded that Plaintiff's spells were nonepileptic. Plaintiff argues that regardless "Plaintiff's seizures were clearly happening, and the ALJ should not be free to reject the opinion because the basis for the seizures does not match what the ALJ expects." [Doc. 21 at 24-25]. The Court finds that the ALJ did not rely on his own lay interpretation of the medical evidence but properly cited to the normal examination findings and test results as substantial evidence that contradicted the disabling limitations opined by Dr. Butler. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("Moreover, an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding.").

Therefore, the Court finds that the ALJ provided good reason for the weight assigned to Dr. Butler's opinion, and Plaintiff's contention to the contrary is not well-taken.

## V. CONCLUSION

Based on the foregoing, the Court **RECOMMENDS**[2] Plaintiff's Motion for Summary Judgment [**Doc. 20**] be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 24**] be **GRANTED**.

Respectfully Submitted,

_____
United States Magistrate Judge

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).